UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARILYN McDONOUGH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-11094-LTS |
| PATRICK DONOHOE, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

September 25, 2012

SOROKIN, C.M.J.

Currently pending is the Defendant's Motion for Summary Judgment (Docket # 19). For the following reasons, the Defendant's Motion is ALLOWED.

I.  FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff Marilyn McDonough, a postal employee, brings claims against the Postmaster General of the United States, Patrick Donohoe, for gender discrimination, disability discrimination, failure to accommodate her disability and retaliation. Docket # 1. A previous case brought by the Plaintiff (McDonough v. Potter, Civil Action No. 08-12122-LTS), concerned events occurring in 2004-2005.[1] The above-entitled action encompasses events occurring

---

[1] McDonough's prior case ended with a grant of summary judgment for the Defendant, which was affirmed by the First Circuit in McDonough v. Donahoe, 673 F.3d 41 (1st Cir. 2012). Its preclusive effect upon the disability discrimination claims advanced by McDonough in this case is addressed infra, at 14.

1

between 2006-2007. On August 1, 2005 (in the course of events giving rise to that earlier case), McDonough filed on an administrative complaint of harassment and discrimination.[2]

McDonough has worked as a letter carrier at the Haverhill, Massachusetts Post Office since 1980.[3] Docket # 20 at ¶ 1. In 1987, McDonough tripped over a basket of magazines at work and injured her back. Id. at ¶ 2. As a result of that injury, McDonough filed a successful worker's compensation claim. Id. At all relevant times, McDonough worked four hours each day and received wage-loss benefits from the Department of Labor's Office of Worker's Compensation Programs to make up for the other four hours. Id. At all relevant times, the postmaster of the Haverhill Post Office was Donna Legro, and McDonough's supervisors were Michael Donnelly, Martin Kleimola and Pedro Pastrana. Id. at ¶ 4.

McDonough alleges that during the 2006-2007 period covered by this action, she suffered from the same physical disability (namely, orthopedic problems in her neck and back) which she had alleged in her previous lawsuit, which concerned the period 2004-2005. Id. at ¶ 8, 10 (citing McDonough administrative affidavit, Docket # 22-3 at 4 ("I have had the physical disability since May 17, 1987")).

McDonough further alleges that between May, 2006 and October 2007, she suffered from anxiety that manifested itself in the form of panic attacks. Docket # 20 at ¶ 4. She alleges that her condition was controlled outside of work, that it was caused by harassment from her

---

[2] It is this August, 2005, administrative complaint which is the protected activity primarily forming the basis of McDonough's retaliation claims in this case. See Docket # 22-2 at 18; McDonough, 673 F.3d at 45. (All record citations herein refer to the pagination assigned by the Court's CM/ECF docketing system, rather than to any pagination contained in the exhibits themselves).

[3] Further facts will be recited below as necessary to the analysis.

supervisors, and that in the absence of such harassment, she does not suffer from anxiety at work. Id. at ¶ 12. The Parties disagree as to whether or not McDonough ever provided the post office with documentation of her anxiety disorder. Id. at ¶ 13. During the relevant time period, McDonough saw a mental health professional seven times. Docket # 25 at ¶ 1. One mental health professional indicated in December, 2005 that McDonough suffered from "mild panic episodes" which were helped by medication. Id. at ¶ 2. By August 2006, McDonough had discontinued that medication and her main concern was lack of sleep. Id. at ¶ 3. In October 2006, McDonough reported "racing thoughts about work" which were "generally manageable" and she was described as "not panicked about it [and] [g]enerally doing pretty good." Id. at ¶ 4.

**Workplace Incidents**

McDonough has identified ten incidents occurring between May, 2006 and October, 2007 as forming the basis of her claims. She testified in her deposition that each of the ten incidents was an instance of retaliation for the August 1, 2005 administrative complaint. Docket # 22-8 at 18. As further detailed below, McDonough also testified that some, but not all, of the incidents were also instances of disability-based discrimination. She did not, however, identify any of the incidents as specifically being related to her gender. Id.; see infra at 12-13.

1. The Post Office failed to investigate McDonough's May 23, 2006 complaint of stolen mail and personal belongings.

On May 22 or 23, 2006,[4] the custodian at an apartment building on McDonough's route discovered bundles of wet undelivered mail dated May 12, 2006 in the building. Docket # 20 at ¶ 16. McDonough was suspended for fourteen days for failing to deliver the mail. Docket # 22-

---

[4] The date of discovery varies between the Post Office's suspension notice (Docket #22-8 at 2, stating May 22) and McDonough's EEO Complaint (Docket # 22-9 at 8, stating May 23).

8 at 2-3. The suspension notice notes that McDonough when confronted did not identify any reason why she had failed to deliver the mail on May 13, 2006 and contains no indication that she claimed the mail had been stolen. Id. McDonough apparently signed the notice, indicating her receipt of it. Id. In a November 19, 2007 EEO Complaint, McDonough alleged that the bundles had been stolen, and held and kept wet for ten days, in order to set her up. Docket # 22-9 at 8. McDonough states in her EEO Complaint that she did not receive the suspension notice, and that "my signature is not on it." Id.

McDonough also alleges that various personal items of hers were stolen and that the Post Office did not investigate. She considered these incidents of thefts themselves to be instances of retaliation for her past administrative complaints, rather than gender or discrimination harassment. Docket # 22-1 at 13. In her deposition, McDonough was unable to recall to whom she had reported the personal items as stolen. Id. at 12-13. She was not able to recall other employees whose allegations of theft were properly investigated. Id. at 15.

    2.    <u>The Post Office did not address McDonough's April 21, 2007 complaint about mail buckets in her work area</u>.

On April 21, 2007, McDonough found approximately fifteen empty mail buckets strewn in her work area upon her arrival. Docket # 20 at ¶ 23. Id. McDonough complained to a supervisor, who removed the buckets. Id. McDonough began hyperventilating and panicking told the supervisor that she needed to go to the doctor. Id. The supervisor approved McDonough's request for emergency sick leave on the condition that she provide a doctor's note, which she did. Id. McDonough alleges that this was an incident of retaliation. Docket # 22-1 at 16.

4

3. <u>McDonough Alleges that Postmaster Donna Legro conducted surveillance of her</u>.

McDonough alleges that she twice saw Legro in a car parked along her route, and that on another occasion she saw Legro's unoccupied car parked along her route. Docket # 20 at ¶ 26; Docket 3 22-1 at 16-17. On the two occasions when McDonough observed Legro, Legro was out on medical leave. Id. McDonough's conclusion that Legro was conducting surveillance of her was based solely upon her assertion that there is no other reason why Legro would be in those locations. Docket # 22-1 at 17. McDonough considered this to be retaliation and disability-based harassment, but not gender-based harassment. Id. at 18.

4. <u>On July 7, 2007, Legro refused to sign a medical form at McDonough's request</u>.

On or about June 21, 2007, the Post Office gave McDonough a form to be signed by her physician providing a medical update with respect to her worker's compensation benefits. Docket # 20 at ¶ 31; Docket # 22-1 at 18-19. One of the pages which was to be completed by a supervisor was blank and McDonough asked her supervisor, Pedro Pastrana, to complete it. Id. at 18. Pastrana asked Legro, and then told McDonough that he could not complete the form. Id. McDonough brought the form to her physician, who completed his portion despite the missing page. Id. McDonough testified that Pastrana's refusal exacerbated her anxiety. Id. at 19. McDonough considered Legro's refusal to allow Pastrana to complete the form to be retaliation and disability-based discrimination, but not gender-based discrimination. Id. She testified, however, that Legro and the Post Office would fill out the form for any other injured letter carrier. Id.

5. <u>On August 10, 2007, the Post Office Changed McDonough's Position</u>

On July 10, 2007, McDonough's orthopedist Richard Corzatt, M.D. opined that she could

push, pull and lift only ten pounds for four hours per day, whereas previously she had been medically cleared to push, pull and lift twenty pounds. See Docket # 22-6 (2007 assessment); Docket # 22-5 (example of previous restrictions). With her twenty pound restriction, McDonough's duties had been to sort mail two hours per day and deliver mail two hours per day. On August 13, 2007, the Post Office made an Offer of Modified Assignment, in which McDonough would case (or, sort) mail 1-2 hours, perform administrative work as assigned for 1-4 hours, and deliver express mail and small parcels 1-2 hours. Docket # 22-14. On August 13, 2007, McDonough indicated her acceptance of the offer by signing it. Id. Thereafter, McDonough sat at a desk and answered phones and also performed various administrative duties such as document shredding. Docket # 22-1 at 21-22.

McDonough testified that she was able to deliver mail, even with the ten pound restriction, because the setup of her route did not require her to carry more than ten pounds. Docket # 22-1 at 20. McDonough also objected that she was never assigned to case mail, even though the modified assignment had described such tasks. Id. at 21. McDonough's supervisor Donnelly testified that although McDonough stated during an August 10, 2007, meeting with himself and Legro that she could still deliver mail, she also stated that winter was coming, and perhaps she would just stay inside. Docket # 22-10 at 11. McDonough testified that she did not recall stating this, but conceded that she may have. Docket # 22-2 at 1. McDonough characterized the refusal to let her sort and deliver mail as retaliation and disability-based harassment, but not gender harassment. Id.

  6. <u>On August 10, 2007, the Post Office denied McDonough's Request For Leave Without Pay</u>

On August 10, 2007, during the same meeting described supra in which Donnelly, Legro

6

and McDonough discussed her modified job duties, McDonough experienced a panic attack, told Donnelly that she needed to leave and go to the doctor, and completed a form seeking leave without pay. Id. at 2.

At her deposition, McDonough testified that she had meant to check a box indicating that she wanted sick leave, but checked the "leave without pay box" inadvertently. Id. She also testified that she could recall no warning from Donnelly that she could not take leave without pay and would be marked AWOL if she did not seek proper leave. Id.

In her November 19, 2007 Complaint to the Equal Opportunity Commission, however, McDonough testified that she marked "leave without pay" intentionally, because that designation had been used in the same situation on a previous occasion ("I filled it out for LWOP because when I went to the doctor for the medical update[,] I was instructed to fill out a leave slip for LWOP . . . so LWOP was what was on my mind"). Docket # 22-9 at 5. She also wrote on that occasion that Donnelly had told her she could not utilize either leave without pay or sick leave. Id. ("Donley [sic] said that LWOP was not authorized and that he wouldn't authorize sick leave either. I gave him the slip and left"). McDonough conceded that she left without waiting for any leave to be authorized. Id.; Docket # 22-2 at 3. As a result of this incident and two others occurring shortly afterward (see Issue 8, infra), McDonough received a fourteen-day "paper suspension," meaning that she suffered no loss of working time or pay. Id. at 6.

McDonough maintained that the leave should have been granted as sick leave because she went to her doctor at the VA. Id. at 2-3. Her VA medical records, however, do not support the assertion that she went to her doctor. See Docket # 25-1 at 1 ("she started to leave because of anxiety but decided not to come to VA. They reported her as AWOL"). McDonough

considered the incident to be retaliation and disability-based harassment, but not gender-based harassment.  Docket # 22-2 at 3.

      7.      <u>The Post Office denied McDonough's Disability Accommodation Requests</u>

McDonough alleges that she made three requests for accommodation for her disabilities which were denied by the Post Office, each constituting both retaliation and disability-based discrimination.  She alleges that she requested: (1) a "wing case" to put next to her sorting case; (2) a stool to help her with sorting; and, (3) thirty minutes "get ready time" before any meeting with management.  <u>Id.</u> at 14.

<u>The Wing Case</u>

The sorting case normally used by McDonough is approximately four feet wide and seven feet tall.  <u>Id.</u> at 8.   Because she felt pain reaching above the height of her shoulder, McDonough did not use the top row of her case.  <u>Id.</u>  Because others who filled in for her on her off days considered her solution "messy," McDonough located on her own initiative a narrow "wing case" to place alongside her case, essentially to replace the disused top row with a vertical column alongside.  <u>Id.</u> at 9. The Post Office removed the wing case at approximately the same time that McDonough was re-assigned to answering phones (<u>see</u> Issue Nine, infra).  Docket # 22-2 at 10.

<u>Use of A Stool</u>

McDonough was permitted to use a stool while sorting mail by the Postmaster prior to Legro.  <u>Id.</u> at 11.  The use of the stool continued until the time she was assigned to administrative duties and was no longer sorting mail.  <u>Id.</u>  For a period of three to four days, she sorted mail without the aid of a stool, which Legro denied her as unsafe.  <u>Id.</u> at 10-12.  After that period, she

returned to desk duty for several years. Id. at 12.

### Thirty Minutes "Get Ready Time"

In 2005, McDonough had requested that she have thirty minutes' advance notice before a meetings with management for the purpose of taking anxiety medication, which request was approved by the prior Postmaster. Id. at 12. Although McDonough asked in 2005 to have such advance notice "from now on," she testified at her deposition that she actually received advance notice on only that one occasion. Id. at 12-13.[5] A contemporaneous email by Donnelly does not indicate that the request for get ready time applied to subsequent meetings (rather than the one meeting at issue in 2005), nor does it reflect awareness that the purpose of the request was to permit McDonough to take medication. See Docket # 22-3 at 20. McDonough's request was not supported by medical documentation. On August 20, 2007, McDonough was summoned to a meeting with Donnelly and Legro, without advance notice.

8. The August 22, 2007 14-day Paper Suspension

On August 22, 2007, McDonough received a 14-day Paper Suspension. Docket # 22-16 at 2-3. She was charged with being absent without leave (see Issue Six, supra) and with conduct unbecoming a postal worker. Id. The latter charge specified that on August 13 and 15, 2007, during meetings for the purpose of reviewing postal procedures and her modified assignment duties, she had exhibited unacceptable conduct by "insisting that management was plotting

---

[5] In opposition to the Defendant's motion, McDonough affirms that "[o]n almost all of the other occasions where I was called in to meet with management after the agreement, I was given this time period to have my union representative present and time to take extra medications so that I would not have an anxiety attack." Docket # 28-1 at ¶ 7. A plaintiff may not create a genuine dispute of material issue of fact on summary judgment by contradicting her previous sworn testimony without adequate explanation. See, Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999).

9

against [her]" and "disputing [her] own personal physician's medical restrictions." Id. at 2. The suspension notice also noted that after signing the modified limited job offer, McDonough threw the form and pen across the desk toward the Postmaster. Id. It additionally described McDonough as rude in her tone of voice and insolent in her mannerisms. Id. McDonough denied the allegations concerning her behavior in the meeting. Docket # 22-2 at 6-7. She considered the suspension to be retaliation and disability-based discrimination, but not gender-based discrimination. Id. at 7.

        9.      <u>McDonough is Made to Hold Six Inches of Mail While Sorting</u>

On October 14, 2007, McDonough accepted an Offer of Modified Assignment that would permit her to again sort mail for up to four hours per day, provided she did not exceed the ten-pound weight restriction imposed by her physician. Docket # 22-18. McDonough objected that the six inches of mail postal regulations required her to hold while sorting weighed (in the case of magazines) seventeen pounds, exceeding the ten-pound restriction. Docket # 22-2 at 15. She asserts that Legro told her that she had to hold six inches of mail, or go home sick. Id. McDonough did not go home sick, injured her shoulder and visited the emergency room. Id. at 11-12. She was then returned to desk duty. Id. McDonough considered this to be retaliation and disability-based discrimination, but not gender-based discrimination. Id.

        10.     <u>McDonough's Shift Changed</u>

The October 14, 2007 Offer of Modified Assignment also changed McDonough's shift from morning to afternoon. Docket # 22-18. McDonough accepted the offer. Id. McDonough testified that the Post Office switched her shift because they knew that she was tired in the afternoon from her medications. Docket # 22-2 at 17. She conceded that nothing in her medical

restrictions limited her four work hours to four morning hours. Id. McDonough considered this to be retaliation and disability-based discrimination, but not gender-based discrimination. Id.

## II. DISCUSSION

### Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009). "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50. "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 703 (1st Cir.1993).

For a fact to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (citation omitted).

   Count I - Gender Discrimination

   In Count I of her Complaint, McDonough alleges that the Post Office discriminated against her on the basis of her gender, in violation of 42 U.S.C. § 2000e. Docket # 1 at ¶¶ 18-19. Whenever a Title VII plaintiff is unable to offer direct proof of an employer's discrimination – as is usually the case, and is here – then the burden of producing evidence is allocated according to the familiar framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under that framework, McDonough must first establish a prima facie case of gender discrimination. Lockridge v. The University Of Maine System, 597 F.3d 464, 470 (1st Cir.2010). The elements of the prima facie case vary according to the nature of a plaintiff's claim, but McDonough must show, among other things, that she suffered an adverse employment action. Id. (citing Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 n. 2 (1st Cir.2008)). If she establishes a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. Id. If the employer does so, McDonough must then show, by a preponderance of the evidence, that the Post Office's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is gender discrimination. Id.

   The Post Office notes that when examined at her deposition about each of the issues she identified as instances of discrimination, McDonough did not identify any of the ten as being

12

instances of gender discrimination. See supra, at 3-10. In each case, she identified the incidents under discussion as being instances of retaliation, of disability-based discrimination, or of both (but not in any instance as gender-based discrimination). Id. When asked thereafter to identify the basis for her gender discrimination claim, she testified only that Donnelly does not like women, and that she could produce witnesses to testify to that. Docket # 22-2 at 18.

> Q: Okay, so you have alleged gender discrimination in this lawsuit. What – what – what part of the – what part of it is gender related?
>
> A: I – Mike Donnelly doesn't like women and if we ever go to court I will bring in several witnesses that will testify to that.
>
> Q: But which of these actions, which of these eleven actions that we've reviewed that were taken against you were done because of your gender?
>
> A: It started out with Donnelly. It's hard to really explain it. All the girls I work with –
>
> Q: The women you work with?
>
> A: Right, we know it's like – I can't – it's hard to explain to someone who hasn't – doesn't – hasn't experienced it with him. I don't – I don't know. He just doesn't like women.
>
> Q: Does that complete your answer?
>
> A: Yes.

Id.

With McDonough having disclaimed gender as a basis for the numerous acts she alleges to be discriminatory, she cannot meet her burden of demonstrating that gender caused her discrimination, or that the Post Office's explanations of the challenged actions were pretextual and masked a motive to discriminate against her on the basis of her gender. McDonough's remaining statement that Donnelly disliked women is not a sufficient basis for a reasonable jury

to conclude that the Post Office is liable for discriminating against McDonough on the basis of her gender.[6] The Post Office is entitled to summary judgment on Count I.

### Count II - Disability Discrimination / - Failure to Accommodate

Count II of McDonough's Complaint alleges disability discrimination and a failure to accommodate her disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791 et seq. Docket # 1 at ¶¶ 20-23. "An 'individual with a disability' [is defined] as 'any person who . . . has a physical or mental impairment which substantially limits one or more of such person's major life activities' or 'has a record of such impairment' or 'is regarded as having such an impairment.' " McDonough, 673 F.3d at 46. McDonough's claim in Count II fails at the initial stage, because she cannot establish that she is, or was disabled, nor that had a record of such impairment, or was regarded by the post office as having such an impairment.

McDonough is precluded from relitigating the issue of whether she had a physical disability covered by the Rehabilitation Act during the time period relevant to this case. Issue preclusion, or collateral estoppel, "bars relitigation of any factual or legal issue that was actually decided in previous litigation between the parties, whether on the same or a different claim." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir.1994). The federal common law of

---

[6] In opposing the Post Office's motion with respect to gender discrimination, McDonough states that with respect to the failure to accommodate McDonough's disability, there was disparate treatment on the basis of gender in that male carriers with disabilities similar to hers were accommodated. See Docket # 27 at 18. As noted previously (see, supra at 9, n. 5) McDonough may not create a genuine dispute of material issue of fact on summary judgment by contradicting her previous sworn testimony without adequate explanation, even by affidavit (which is lacking with respect to this issue). See, Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999). With McDonough having previously disclaimed under oath any gender-based motivation for the failure to accommodate, her counsel may not now revive such claim simply by making the argument in pleadings.

issue preclusion requires that: (1) both proceedings involved the same issue of law or fact; (2) the parties actually litigated that issue; (3) the prior court decided the issue in a final judgment; and (4) resolution of that issue was essential to judgment on the merits. Global NAPs, Inc. v. Verizon New England, Inc., 603 F.3d 71, 95 (1st Cir.2010).

The physical disability at issue in this case (i.e., back and neck pain) is the same as that which was at issue in the prior case. See McDonough, 673 F.3d at 47 ("McDonough argues that she . . . has an impairment—back and neck pain—that substantially limits five major life activities"); Docket # 1 at ¶ 6 (McDonough "suffers from a disability (chronic orthopedic problems in her neck and back and related symptoms, and anxiety')).

The only change in McDonough's condition revealed by the record evidence is that in July 2007, her orthopedist judged her capable of lifting, pushing or pulling just ten pounds, although in 2004-2005, the same orthopedist had found her capable of lifting twenty pounds and pulling and pushing without restriction. Docket # 20 at ¶ 11. This change is not of sufficient import to affect the conclusion reached in the prior case that McDonough did not have an impairment which substantially limited the major life activity of working and that she was able to do her job satisfactorily despite her limitation. This change (which in isolation would be clearly insufficient to render her disabled) is of no import where the previous case did not present a close call. See McDonough, 647 F.3d at 46-47 ("McDonough has not pointed us to any evidence that she was substantially limited in the major life activity of working") (emphasis added); see also Docket # 24 at 21-22 (myriad cases cited by the Post Office to the effect that a lifting restriction is not a substantial limitation). This is particularly so where McDonough herself vociferously denies that the new lifting limitations affected her work capabilities. See,

e.g., Docket # 22-1 at 20 (McDonough testifies that she was able to perform the same functions she had performed previously despite the new lifting restriction, because her duties as previously arranged did not require her to lift more than ten pounds). The issue was fully resolved in the prior litigation (proceeding to a judgment affirmed on appeal) and resolution of that issue was dispositive on the merits. Thus, McDonough may not relitigate the prior determination that she is not physically disabled within the meaning of the Rehabilitation Act.

This determination does not end our inquiry with respect to Count II, however, because McDonough also alleges that: (1) she suffered during the relevant time period from the mental impairment of anxiety, which qualifies as a disability; (2) she had a record of having both mental and physical impairments and/or (3) was regarded by the postal service as having both mental and physical impairments.

Anxiety

With respect to McDonough's anxiety, the uncontroverted record evidence is that her anxiety was well controlled outside of work. Docket # 20 at ¶ 12. She is therefore necessarily limited to arguing that her anxiety substantially limits only the major life activity of working.

The Equal Employment Opportunity Commission regulations applicable in this case[7]

---

[7] The regulations defining the term "substantially limits" were amended effective March 25, 2011. Two reasons support application of the regulations as they existed during the time period relevant to this case. First, McDonough has not (in her briefing, or at argument) urged application of the present regulations. Second, the general rule is that changes in the law will not be applied retroactively when the result would be that "new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 720 (1974). Thus, even " 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.' " Landgraf v. USI Film Prods., 511 U.S. 244, 272 (1994) (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988)).

state that the term "substantially limited" means:

> (I) Unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
> 29 C.F.R. § 1630.2(j)(1).

The Supreme Court has held that, with respect to the major life activity of working, the phrase "substantially limits" means that a plaintiff alleging disability discrimination must show, at a minimum, that she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92 (1999). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Id. Where McDonough does not allege that she is even precluded from performing her own job by her anxiety, but merely affected when supervisors harass her, she is not disabled by anxiety.

### Record/Perception of Disability

Since the physical and mental impairments from which McDonough had previously suffered do not, as a matter of law, rise to the level of disabilities under the statute pursuant to which McDonough seeks relief, it is therefore immaterial whether or not she had a record of having such impairments. They may not form a basis for liability.

With respect to the allegation that the Post Office discriminated against McDonough because it regarded her as disabled, there are two ways in which McDonough could demonstrate that the Post Office regarded her as disabled: (1) by showing that it mistakenly believes that she has a physical impairment that substantially limits one or more major life activities, or (2) by

showing that it mistakenly believes that an actual, nonlimiting impairment substantially limits one or more of her major life activities. Quiles-Quiles v. Henderson, 439 F.3d 1, 5-6 (1st Cir.2006). As noted supra, this would require proof that the Post Office regarded McDonough as unable not only to perform specific tasks, or even her entire job, but rather that it perceived her as unable to work in a broad class of jobs (the meaning of substantially impaired in the life activity of working). Id. The record does not contain evidence which would support this conclusion.

Because the Court has concluded that McDonough is not disabled as a matter of law, and that no reasonable jury could conclude that she had a record of such impairment, or was regarded as disabled by the Post Office, it need not consider whether the acts alleged to have constituted disability discrimination are sufficient to support liability (either as discrete acts, in the form of a work environment hostile to disabled persons). Likewise, the Court need not address the failure to accommodate claim any further, having found that McDonough has no cognizable disability.

Count III - Retaliation

McDonough has testified that each of the ten instances of discrimination she describes (see supra, at 3-10) were taken in retaliation for her August 1, 2005 administrative complaint, in violation of both the Rehabilitation Act and Title VII.

With respect to her Rehabilitation Act retaliation claim, McDonough may make out a prima facie case by showing that (1) she engaged in protected conduct, (2) she was subjected to an adverse action by the Post Office, and (3) there was a causal connection between the protected conduct and the adverse action. D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir.2012). Once she makes such a showing, the burden shifts to the Post Office to

articulate a legitimate, non-retaliatory explanation for the adverse action(s) demonstrated.  Id.  If the Post Office does so, the burden shifts back to McDonough to show that the proffered legitimate explanation is pretextual, meaning that the Post Office was motivated by retaliatory animus.  Id.[8]

The Parties do not dispute that McDonough's 2005 administrative claim constituted protected activity, and the Court assumes arguendo that it does.[9]  The Court assumes, without so deciding, that McDonough has established a prima facie case.  There is no dispute that the Post Office has met its burden at the second stage of advancing legitimate non-retaliatory reasons for the challenged actions.  McDonough, however, cannot meet her burden at the third stage of showing by a preponderance of the evidence that the actions she challenges (assuming a jury might reasonably conclude some were materially adverse) were taken not for the reasons identified by the Post Office, but rather for retaliatory purposes.  McDonough's subjective belief

---

[8] It is unclear whether McDonough's retaliation claim under Title VII is viable.  See Roman v. Potter, 604 F.3d 34, 39 (1st Cir.2010) (the Supreme Court has left unresolved whether federal employees may bring retaliation claims pursuant to Title VII) (citing Gomez–Perez v. Potter, 553 U.S. 474, 128 S.Ct. 1931, 170 L.Ed.2d 887 (2008).  In any event, because the Court assumes that McDonough makes out a prima facie case, and because the McDonnell Douglas burden shifting analysis otherwise applies to a Title VII retaliation claim, if viable (see Roman, Id.), any Title VII claim would fail for the same reasons as McDonough's Rehabilitation Act retaliation claim.

[9] McDonough also alleges that her request for a wing case constituted protected activity because it was a request for accommodation.  Her deposition testimony, however, reveals that the request was not for her own work purposes and based upon her alleged disability (her own solution of not using the top row having sufficed for years for her purposes), but rather was based upon her desire to keep her work area tidy for other employees who filled in for her and who objected that her practice was messy.  See Docket # 22-2 at 9.  McDonough's medical assessments did not include any restrictions as to reaching.  See, e.g., Docket #s 22-5, 22-6.  As noted previously, McDonough may not escape the consequences of her previous sworn testimony by taking a contrary position in opposition to summary judgment.  See notes 5-6, supra.

that the decisions at issue were motivated by retaliatory animus (or her belief that there is no other logical explanation for the actions other than discrimination or harassment) is insufficient to bear her burden.  Quinones v. Buick, 436 F.3d 284, 290 (1st Cir.2006) (citing Johnson v. Nordstrom, Inc., 260 F.3d 727, 733 (7th Cir.2001)).  McDonough's memorandum is silent as to the evidence connecting the actions complained of with a retaliatory motive.  At the hearing on the motion, McDonough's counsel recited a litany of actions she considered to be retaliatory, but identified no evidence showing tending to show that the actions were caused by McDonough's protected activity.  McDonough cannot meet her burden, and the Post Office is entitled to summary judgment on this claim.

III.     CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket # 29) is ALLOWED.

    /s / Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE